# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 8683 | **DATE** | 11/30/2012 |
| **CASE TITLE** | Reid et al vs. Neighborhood Assistance Corp of America | | |

**DOCKET ENTRY TEXT**

Plaintiffs' motion to compel documents and information withheld on the basis of privilege [39] is denied.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiffs' Kendall Reid's and Bradley Sears' Motion to Compel testimony and production of information withheld on the basis of privilege by Defendant Neighborhood Assistance Corporation of America ("NACA"). (R. 39, Mot. to Compel.) Defendant opposes the motion. (R. 50, Def.'s Resp. to Pls.' Mot. to Compel.) For the following reasons, the Court denies Plaintiffs' motion to compel and request to reopen discovery.

## BACKGROUND

On December 7, 2011, Defendant NACA removed this action from the Circuit Court of Cook County based on the Court's diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441; (Notice of Removal ¶ 1.) In their Complaint, Plaintiffs Kendall Reid and Bradley Sears alleged retaliatory termination under Illinois law by their former employer, NACA. (Compl. ¶¶ 31-32, 43-54.) Plaintiff Reid served NACA with interrogatories requesting, among other information, the names of those individuals involved in Kendall Reid's termination from NACA. (R. 40, Ex. A, Def.'s Resps. to Pls.' First Interrogs. ¶ 11.) ("Def.'s Resps."). On February 17, 2012, NACA responded to Plaintiffs' first set of interrogatories. (Def.'s Resps.)

In response to Interrogatory #11, which asked for the names of individuals involved in Kendall Reid's termination, NACA provided the names Donald Meadows, Rachelle Pride, and Christine Cannonier. (*Id.*) NACA's Responses identified "Counsel for NACA," as the person or persons "who prepared or assisted in the preparation of the responses." (Def.'s Resps. 2, ¶ 1.) Mr. Ethan Horowitz, Deputy General Counsel for NACA, later clarified in his deposition that "Counsel for NACA" referred to himself as well as "outside counsel" for NACA (Mot. to Compel, Ex. D, Horowitz Dep. Tr. 8:14-24, 9:1-3.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

On July 17, 2012, NACA served its second set of amended responses[1] ("Amended Responses" or "Am. Resps.") to Plaintiffs' first set of interrogatories.[2] (Mot. to Compel, Ex. B.) Specifically, NACA added the name Bruce Marks, NACA's CEO and President, to its response to Interrogatory #11, which asked for the names of individuals involved in Reid's termination. (Def.'s Resps. ¶ 11; Def.'s Am. Resps. ¶ 11.)

On August 16, 2012, Plaintiffs' Counsel deposed Mr. Marks and Mr. Ethan Horowitz, NACA's Deputy General Counsel. (Mot. to Compel, Ex. E, Mark Dep. Tr., 7:8; Mot. to Compel, Ex. D, Horowitz Dep. Tr. 1, 5:6.). Contrary to NACA's Amended Responses, Bruce Marks testified in his deposition that he was the only individual involved in the termination of Plaintiffs. (Marks Dep. Tr. 68:7-9, 62:7-12; *Id.* at 36:5-11, 68:4-5). Marks also testified that he had no knowledge of Sears' and Reid's alleged complaints apart from any privileged communications with NACA's attorneys. (Marks Dep. Tr. 79: 17-24; 80-84.)

During Mr. Horowitz's deposition, Mr. Horowitz indicated in response to a question about Interrogatory #2[3] that he would not disclose any privileged information obtained from his clients in the course of preparing and verifying NACA's first responses to Plaintiffs' interrogatories.[4] Later, when Plaintiffs' Counsel asked Mr. Horowitz about the information underlying NACA's responses to Interrogatory #11 and #13, which asked for the names of persons involved in the decision to terminate Kendall Reid and Bradley Sears, respectively, Mr.

---

[1]To avoid confusion, the Court notes that NACA initially amended its responses to Plaintiffs' first set of interrogatories on May 3, 2012. (*See* Mot. to Compel, Ex. D, Horowitz Dep., Ex. 2, Def.'s Am. Ans. & Objs. to Pls.' First Set of Interrogs.)

[2]Defendant's second set of amended responses specify that they refer only to Plaintiff Kendall Reid because "Plaintiffs' First Set of Interrogatories to Defendant defines 'Plaintiff' to mean Kendall Reid only." (Def's Am. Resps. 2 n.1.)

[3]Interrogatory #2 asked NACA, among other things, to identify any persons "whom Defendant believes is a witness to or who has knowledge or information of the facts that relate to the allegations in Plaintiff's Complaint and/or any of Defendant's defenses to Plaintiff's allegations." (Def.'s Resps. ¶ 2.)

[4]The following exchange between Mr. Horowitz and Plaintiffs' Counsel, Mr. Michael Tinaglia, provides the relevant context:

> **Mr. Tinaglia:** I'm asking for all facts that you learned from Mr. Marks that formed the basis for the response to interrogatory number two in Exhibit 1.
> **Mr. Horowitz:** That were told to me in nonprivileged conversations?
> **Mr. Tinaglia:** I'm not limiting it. That's not my question. I want to know what facts that form the basis of the interrogatory that you verified.
> **Mr. Horowitz:** Unfortunately, I think you're going to need to file a motion to compel to get that information because I cannot divulge information that I received from my client under attorney/client privilege to you in this deposition. I can't do that.
> **Mr. Tinaglia:** I guess I will have to go through the exercise of asking the questions, and you certainly–no offense
> **Mr. Horowitz:** I will invoke the privilege.

(Horowitz Dep. Tr. 17:2-18.)

Horowitz asserted the attorney–client privilege.[5] (Horowitz Dep. Tr. 34-36.)

On September 19, 2012 Plaintiffs moved to compel NACA to produce documents and information withheld on the basis of the attorney–client privilege. They argue that NACA waived the privilege with respect to any privileged information underlying its responses to the interrogatories by Mr. Horowitz's verification of the responses to the first set of interrogatories and NACA's subsequent amendment of those responses.[6] Thus, according to Plaintiffs, in doing so, NACA placed "at issue" any privileged information that "formed the basis of the changes in interrogatory answers."[7] (Mot. to Compel 14.)

---

[5]The following exchanges between Mr. Tinaglia, Mr. Horowitz, and Counsel for Mr. Horowitz, Mr. Darren Mungerson, demonstrate Mr. Horowitz's assertion of the privilege.

> **Mr. Horowitz:** So, Michael, during my conversation with Bruce Marks prior to the date or about the topic of this litigation prior to the date I verified Exhibit 1, I did discuss with Bruce any involvement that he may or may not have had with the termination of both Kendall Reid and Bradley Sears or Bradley Sears, either one.
> **Mr. Tinaglia:** Was his response with respect to Mr. Sears consistent with the response to interrogatory 13 which does not identify Mr. Marks as being involved?
> **Mr. Mungerson:** I'm going to object to that one. I think that gets into the substance of what was said as opposed to simply being the subject matter. So I'm going to instruct my client—
> **Mr. Horowitz:** Let me answer it this way
>
> . . . .
>
> **Mr. Horowitz:** Here's how I'm going to answer this question. After reviewing the specific nonprivileged sources that we already discussed and after my discussions with Don Meadows, Bruce Marks, and Christine Cannonier and maybe Detria Austin and Rachelle Pride, taking all that information, I determined that it was more likely than not that Bruce Marks was not involved in the decision to terminate Bradley Sears although he was more likely than not aware of the decision to terminate Bradley Sears.
> **Mr. Tinaglia:** And based on that conclusion, that is how you answered interrogatory number 13 of Exhibit 1?
> **Mr. Horowitz:** Exactly
> **Mr. Tinaglia:** And the same question with respect to Kendall Reid?
> **Mr. Horowitz:** And I will give you the same answer. . . .

(Horowitz Dep. Tr. 34-36.)

[6] Mr. Horowitz did not verify NACA's Amended Responses. (Def.'s Am. Resps.; Mot. to Compel, Ex. D, Horowitz Dep. Tr. 12:5-8.)

[7] Plaintiffs also assert that NACA has waived the work-product privilege "with respect to conversations and interviews between Ethan Horowitz and Bruce Marks, Christine Cannonier, Don Meadows, Rachelle Pride and Detria Austin." (Mot. to Compel ¶¶ 34,39.) Given that the parties devoted only a few lines in their briefs to this issue, and the Court has concluded the information remains protected under the attorney–client privilege, the Court will not reach the issue of work-product.

## ANALYSIS

I. **Procedural Arguments**

As a threshold matter, Defendant argues that Plaintiffs' motion to compel is procedurally defective on two grounds: (1) it is untimely; and (2) Plaintiffs have failed to satisfy the "meet and confer" requirement of Local Rule 37.2.

    A. **Local Rule 37.2**

Under Local Rule 37.2, all discovery motions under Rule 37 of the Federal Rules of Civil Procedure must include a statement that either: (1) after consultation and "good faith attempts to resolve differences," counsel are unable to reach an accord; or (2) such attempts were "unsuccessful due to no fault of counsel's." Local Rule 37.2. The purpose of the Rule is to "curtail undue delay and expense in the administration of justice." *Id.* Furthermore, the Court's case management procedures specify that the Court "will not hear or consider any discovery motion or non-dispositive dispute unless the movant has complied with the 'meet and confer' requirement of Local Rule 37.2." http://www.ilnd.uscourts.gov/home/JudgeInfo.aspx.

As Defendant notes, Plaintiffs failed to include any statement in their Motion or accompanying memorandum of law demonstrating compliance with the Rule 37.2 requirements. (Def.'s Resp.15.) In their reply brief, Plaintiffs argue that they satisfied Local Rule 37.2 in substance because their attempts to reach an agreement with the Defendant were unsuccessful. In support of this position, Plaintiffs identify the following exchange between Mr. Tinaglia and Mr. Horowitz during Mr. Horowitz's deposition:

> **Mr. Tinaglia:** I'm asking for all facts that you learned from Mr. Marks that formed the basis for the response to interrogatory number two in Exhibit 1.
> **Mr. Horowitz:** That were told to me in nonprivileged conversations?
> **Mr. Tinaglia:** I'm not limiting it. That's not my question. I want to know what facts that form the basis of the interrogatory that you verified.
> **Mr. Horowitz:** Unfortunately, I think you're going to need to file a motion to compel to get that information because I cannot divulge information that I received from my client under attorney/client privilege to you in this deposition. I can't do that.

(Mot. to Compel, Ex. D., Horowitz Dep. Tr. 17:2-14.)

This exchange does not satisfy Local Rule 37.2. A mere request for information during a deposition when the lawyers might well be posturing for their clients does not equate with good faith compliance. Nevertheless, the Court will address the merits of the Motion.

    B. **Timeliness of the Motion**

Although the Federal Rules of Civil Procedure place no time limit on filing a motion to compel within the discovery period, district courts may deny motions as untimely due to unexplained or undue delay or when the late motion will require an extension of the discovery period. *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005); *see also Grassi v. Info. Res., Inc.*, 63 F.3d 596, 604 (7th Cir. 1995) (affirming denial of untimely motion to compel discovery). This power arises from the "extremely broad discretion in controlling discovery," and the Court may exercise this discretion to deny a motion to compel as untimely. *In re Sulfuric Acid*, 231 F.R.D. at 336; *see Crawford–El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Notwithstanding this

discretion, "motions to compel filed after the close of discovery are almost always deemed untimely." 231 F.R.D. 331, 332 (N.D. Ill. 2005) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001)). *But see Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 236 (N.D. Ill. 2000) (allowing motion to compel after close of discovery upon counsel's showing of a "persuasive justification" for the delay).

Plaintiffs filed their motion to compel on September 19, 2012. (R. 39.) Discovery closed on August 13, 2012. (R. 31, Order, June 27, 2012). Plaintiffs deposed Mr. Marks and Mr. Horowitz on August 16, 2012. Defendant argues that Plaintiffs' delay in filing the Motion is without justification. Indeed, as of June 14, Defendant informed Plaintiffs that Mr. Marks' involvement was limited to: "one conference call where termination of employees was discussed, a telephone call allegedly made by Mr. Marks to Mr. Don Meadows relating to the breach of confidentiality policies, and whether Mr. Marks was on the telephone call where Reid/Sears made complaints." (Def.'s Resp. to Pls.' Mot. to Compel, Ex. 7, at 2.) On July 17, however, NACA amended its position and indicated that Mr. Marks was involved in the decision to terminate Plaintiffs. Furthermore, on August 16, Mr. Marks testified that he was the only individual involved in the termination of Plaintiffs. (Marks Dep. Tr. 68:7-9, 62:7-12; Marks Dep. Tr. 36:5-11, 68:4-5.) On the same day, Mr. Horowitz, during his own deposition, asserted for the first time the attorney–client privilege as to the information at issue in this Motion. The relevant gap in time–between August 16 and Plaintiffs' filing of this Motion on September 19–was not unreasonable.

## II. "At-Issue" Waiver of the Attorney–Client Privilege

Because diversity of citizenship is the basis for jurisdiction in this case and the claims at issue arise under Illinois law, Illinois law also governs questions of attorney–client privilege. *See Wychocki v. Franciscan Sisters of Chi.*, No. 10 C 2954, 2011 WL 2446425, at *3 (N.D. Ill. June 15, 2011) (citing Fed. R. Evid. 501); *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 989 (7th Cir. 1994). In defining the attorney–client privilege, the Illinois Supreme Court has stated that "where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal adviser, except the protection be waived." *Fischel & Kahn v. van Straaten Gallery*, 189 Ill.2d 579, 584, 244 Ill. Dec. 941, 944, 727 N.E.2d 240, 243 (Ill. 2000). "The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Id.* "Moreover, 'the [attorney–client] privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client.'" *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)).

Notwithstanding the rationale for the privilege, Illinois courts also recognize a "strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Mgmt. Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 190, 161 Ill. Dec. 774, 779, 579 N.E.2d 322, 327 (Ill. App. Ct. 1991) (dicta). Courts should "construe the privilege 'within its narrowest possible limits.'" *Ill. Emasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 393 Ill. App. 3d 782, 786, 913 N.E.2d 1102, 1105 (Ill. App. Ct. 2009) (quoting *Waste Mgmt.*, 144 Ill. 2d at 190).

Plaintiffs argue that NACA waived the attorney–client privilege under the "at issue" waiver doctrine by placing "at issue" the information underlying Mr. Horowitz's verification of NACA's first responses to Plaintiffs' first set of interrogatories. Specifically, Plaintiffs contend that in light of Mr. Mark's testimony that he was the only individual involved in the termination of Plaintiffs, which conflicted with NACA's earlier responses to Plaintiffs' interrogatories that Mr. Horowitz verified, Mr. Horowitz waived the attorney client privilege by verifying NACA's first responses to the interrogatories. According to Plaintiffs, these actions amount to "at issue" waiver because they introduce inconsistencies in the case concerning the individuals involved in Plaintiffs'

terminations.

Under Illinois law, "at issue" waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Lama v. Preskill*, 353 Ill. App. 3d 300, 305, 818 N.E.2d 443, 448 (Ill. App. Ct. 2004.) Typically, "at issue" waiver arises in suits by clients against attorneys for malpractice or by lawyers against clients for fees. *Id.* at 305 (noting in these cases "a waiver applies to the earlier communications between the now-adversarial parties").

The fact that an issue may be merely "subject to dispute" by the parties, however, does not equate with waiver of the privilege with respect to any attorney–client communications "that might touch on that question." *See Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 587, 244 Ill. Dec. 941, 946, 727 N.E.2d 240, 244 (Ill. 2000); *Hayes v. Burlington N. & Santa Fe Ry. Co.*, 323 Ill. App. 3d 474, 480, 256 Ill. Dec. 590, 596, 752 N.E. 2d 470, 476 (Ill. App. Ct. 2001) (rejecting the notion that the attorney–client privilege "should yield when evidence contained in defendant's documents may help plaintiff to rebut an issue raised by defendant."); *In re Estate of Wright*, 377 Ill. App. 3d 800, 805, 317 Ill. Dec. 194, 199, 881 N.E.2d 362, 367 ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter.") Rather, waiver arises only if "the litigant directly puts the attorney's advice at issue in the litigation." *Estate of Wright*, 377 Ill. App. 3d at 805, *see also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 325 (N.D. Ill. 2008) (noting under Illinois law a party must "use[] privileged communications to defend itself or attack its opponents). Lastly, the privileged information must not be merely "one alternative means" for obtaining the information. *Fischel & Kahn*, 189 Ill. 2d at 590 ("Mere convenience, however, should not justify waiver of the attorney-client privilege.")

Plaintiffs' argument that NACA committed "at issue" waiver fails for several reasons. First, NACA's actions do not rise to the level that courts have found necessary to constitute "at-issue" waiver. NACA's verification and subsequent amendment of interrogatories are a far cry from asserting a defense or counterclaim the resolution of which depends on privileged information. *See, e.g.*, *Western States Ins. Co. v. O'Hara*, 347 Ill. App. 3d 509, 520-21, 828 N.E.2d 842, 851 (Ill. App. Ct. 2005) (finding insurer placed good faith of prior settlement against insured at issue in seeking declaration that insured exhausted policy limits); *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 394, 782 N.E.2d 813, 819 (Ill. App. Ct. 2002) (holding defendant had placed "at issue" the conduct of his former counsel by asserting former counsel engaged in an unauthorized settlement). NACA merely responded and supplemented its responses to Plaintiffs' requests for information during the discovery process. (Def.'s Resps.; Def.'s Am. Resps.) NACA's attorneys acted properly once they realized NACA's first responses to Plaintiffs' interrogatories were inaccurate or incomplete. Moreover, notwithstanding Illinois' policy of narrowly construing the privilege, a holding that verification of an interrogatory response that subsequently requires amendment results in a waiver of any privileged information underlying the response "would quickly swallow the attorney-client privilege and frustrate the important policy considerations it exists to protect." *See Estate of Wright*, 377 Ill. App. 3d at 806.

Plaintiffs' citation to *Lama* in support of their waiver argument is also unconvincing. First, as Justice Bowman noted in dissent in *Lama*, the *Lama* majority relied upon *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269 (N.D. Ill. 1997), which applied a highly criticized version of the "at issue" waiver test. *Lama*, 353 Ill. App. 3d at 309-10 (Bowman, J., dissenting). Subsequently, at least one Illinois appellate court has limited *Lama* to its facts. *See Estate of Wright*, 377 Ill. App. 3d at 806 ("Given the controversy surrounding the rule adopted in *Lama*, we are unwilling to give it an expansive reading and to apply it beyond its stated facts."). Moreover, the present case is distinguishable from *Lama*. In *Lama*, the plaintiff, who alleged medical negligence for injuries sustained in surgery, argued in her complaint that the "discovery rule" should toll the statute of limitations because she did not learn of the injury from the surgery until after the statute of limitations had run. In response, the defendant argued that the plaintiff knew of her injury at the time of the

operation based upon an affidavit submitted by the plaintiff's attorney, which stated that the plaintiff's attorney and the plaintiff's husband had met four days after the surgery and that the plaintiff's husband brought with him plaintiff's medical records, which the plaintiff had requested. The court held that by arguing that the discovery rule applied in her complaint, plaintiff placed the timing of her awareness of her injury at issue. Thus, the plaintiff, acting through her husband as agent, waived the attorney–client privilege with respect to communications with her attorney. *Lama*, 353 Ill. App. 3d at 306-07. Here, Mr. Horowitz's verification of an interrogatory that NACA would later amend is not comparable to the *Lama* plaintiff's raising of a tolling issue in her complaint that was necessary for her suit to survive and for which the disclosure of privileged information was vital to the issue's resolution.

Second, any "inconsistencies" NACA has created by amending its interrogatory responses do not equate with placing any privileged information underlying those responses "at issue." Although any inconsistencies may be relevant to who was involved in the decision to terminate Plaintiffs, this relevancy[8] does not establish that the information is "at issue" for purposes of this doctrine. *See Hayes*, 323 Ill. App. 3d at 480 (Ill. App. Ct. 2001). Finally, any privileged information underlying NACA's responses is but one "alternative means" for Plaintiffs to investigate any inconsistencies these responses may have introduced. *See Fischel & Kahn*, 189 Ill. 2d at 590. Indeed, Plaintiffs have already deposed Mr. Horowitz and all the individuals whom NACA has identified as involved in the decision to terminate the Plaintiffs, Don Meadows, Christine Cannonier (in both her personality capacity and as witness under Fed. R. Civ. P 30(b)(6)), Rachelle Pride, and Bruce Marks. (Def.'s Resps. ¶¶ 11-13.) (Def.'s Am. Resps. ¶¶ 11-13.); (Mot. to Compel, Ex. I, Dep. Tr. Don Meadows; Mot. to Compel, Ex. F, Dep. Tr. Christine Cannonier; Mot. to Compel, Ex. D, Dep. Tr. Ethan Horowitz; Mot. to Compel, Ex. H, FRCP 30(b)(6) Dep. Tr. Cannonier; Mot. to Compel, Ex. E, Dep. Tr. Bruce Marks.); (Mot. to Compel 3.).

Thus, the Court denies Plaintiffs' motion to compel documents and information withheld on the basis of privilege.

---

[8]Moreover, Plaintiffs' argument that NACA's inconsistent interrogatory responses regarding the individuals involved in the decision to terminate Plaintiffs Reid and Kendall creates a factual issue overlooks a number of distinctions. First, the question of who was involved in the decision to terminate the Plaintiffs is different from the question of Mr. Horowitz's knowledge as to who those individuals were when he verified the NACA first set of responses to the interrogatories. The distinction is salient in this case, where it is undisputed that Mr. Horowitz has no personal knowledge of the Plaintiffs' terminations because NACA hired him in 2011, and the alleged terminations occurred in 2010. (Mot. Compel, Ex. D, Horowitz Dep. Tr. 7:21-24; Compl. ¶¶ 2,5.) Given that Plaintiffs move the Court to reopen discovery "to reconvene the deposition of Ethan Horowitz" and compel NACA to generally produce any other privileged information regarding which employees were involved in the termination decisions, (Mot. to Compel 15.), Plaintiffs' request more properly goes to the second question, which is less relevant than the first.